IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jimmy Soto-Maldonado, et al,<br><br>Plaintiffs,<br><br>v.<br><br>Erik K. Shinseki, Secretary of the U.S. Department of Veteran Affairs,<br><br>Defendant. | Civil No.:12-1621 (DRD) |

## OPINION AND ORDER

Jimmy Soto-Maldonado ("Soto-Maldonado"), his wife Maritza Morales Guzman, and their conjugal partnership (collectively, "Plaintiffs") filed suit against Eric K. Shinseki ("Defendant"), the Secretary of the U.S. Department of Veteran Affairs, alleging negligence under the Federal Tort Claims Act, 28 U.S.C. 1346 (b), Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 ("Article 1802"), and Article 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5142 ("Article 1803"). Plaintiffs assert that Defendant was negligent when its employees allegedly used excessive force to subdue Plaintiff Soto-Maldonado at the Veterans Affairs Medical Center ("VAMC") in San Juan, Puerto Rico.

### I. RELEVANT FACTUAL & PROCEDURAL HISTORY

On November 27, 2010, at approximately 6:00 pm, Plaintiff Soto-Maldonado, accompanied by his wife, Plaintiff Morales, went to the VAMC's Psychiatric Intensive Care Unit ("PICU") in San Juan, Puerto Rico seeking medical treatment (Docket No. 14-4, Pgs. 2-5). At the

1

time of his arrival at the PICU, Plaintiff Soto-Maldonado was in a fragile mental state and began recalling his past military experiences during a conversation with one of the attending nurses. Id. After communicating to one of the nurses his current feelings and symptoms, Plaintiff Soto-Maldonado was directed into Dr. Hurtado's office, the physician on duty. Id. When Dr. Hurtado asked Plaintiff Soto-Maldonado to describe how he was feeling, Plaintiff responded: "Don't do that to me. Read the record. I told the nurse my symptoms. I do not want to lose my control again because I do not know what could happen because I feel very nervous." Id.

When pressed by Dr. Hurtado, Plaintiff Soto-Maldonado became disorganized, disruptive, and aggressive (Docket No. 14-5, Pg. 3). He began threatening the medical staff and the VA police officers, and even stated to one of the officers that "I will jump on top of you and do whatever I want. Do you want to see? If you inject me with medication, you will have to fight." Id. When Officer Luis Salas Lopez, a VA police officer assigned to the ICU, attempted to calm down Plaintiff Soto-Maldonado, Plaintiff Soto-Maldonado became aggressive and began attacking the police officers with his fists (Docket No. 14-5, Pg. 2). Two other officers on the scene, Sgt. Gonzalez and Officer John Rivera, attempted to apprehend Plaintiff Soto-Maldonado by locking his hands behind his back. Id. However, Plaintiff Soto-Maldonado resisted and was able to free his right hand, grab Officer Salas' head, and scratch him with his fingernails across his forehead. Id. Once subdued, Plaintiff Soto-Maldonado was placed in a bed and, upon Dr. Hurtado's orders, was sedated. Id.

On November 30, 2010, the same day he was released from the hospital, Plaintiff Soto-Maldonado reported to DVA Psychiatrist Zaida Reoyo that he had been physically abused by the PICU staff and that during the course of the abuse he was elbowed in the mouth, causing his lower lip to tear (Docket No. 14-7, Pgs. 1-4). He also reported that his right arm was twisted while being restrained. Id. Dr. Reoyo performed a physical examination of Plaintiff Soto-Maldonado and found no evidence of any recent trauma. Id. Furthermore, Dr. Hurtado had previously ordered chest x-rays and a bone survey to scan for possible fractures, but both tests came back negative for any recent traumatic lesions (Docket No. 14-6, Pgs. 1-2).

On May 26, 2013, Defendant filed a *Motion for Summary Judgment* (Docket No. 14) accompanied by a *Statement of Facts*. On July 29, 2013, Plaintiffs filed a *Motion to Quash and Deny* Defendant's *Motion for Summary Judgment* (Docket No. 22), arguing that Defendant relied on privileged medical information in presenting their case.

Plaintiffs in the case at bar failed to file a proper opposition as required under Local Rule 311.12. As none of Defendant's factual statements are contested, this Court accepts as true all factual statements contained in Defendant's *Statement of Facts* (Docket No. 14),

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." Veda-Rodriguez v. Puerto Rico, 110 F.3d 174, 179 (1st Cir. 1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. Id. Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id.

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." Cortes-Irizarry v. Corporacion Insular, 11 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 959-60 (1st Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See* Poller v. Columbia Broad. Sys., 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also* Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also* Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." Rodríguez v. Municipality of San Juan, 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 85 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence

5

which, in the aggregate, is less than significantly probative." Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. CIV. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also* Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").[1]

If a defendant fails to file an opposition to the motion for summary judgment, the district court may consider the motion as unopposed and disregard any subsequently filed opposition. Velez v. Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004). Furthermore, the district court must take as true any uncontested statements of

---

[1] D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, a s to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. CIV. R. 56(c).

fact. Id. at 41-42; *see* D.P.R.R. 311.12; *see* Morales, 246 F.3d at 33 ("This case is a lesson in summary judgment practice …. [P]arties ignore [Rule 311.12] at their own peril, and … failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.")(internal citations and quotations omitted); *see also* Euromodas, Inc. v. Zanella , Ltd., 368 F.3d 11, 14-15 (1st Cir. 2004). However, this does not mean that summary judgment will be automatically entered on behalf of the moving party, as the court "still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." *See* Velez, 375 F.3d at 42.

### III. LEGAL ANALYSIS

#### A.   Immunity Under Discretionary Function Exception

The FTCA provides a limited waiver of the United States government's sovereign immunity "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, there are numerous exceptions to the waiver of sovereign immunity under the FTCA, one of which is the discretionary function exception. *See* 28 U.S.C. § 2680(a).

Under the discretionary function exception, the federal government is immune from FTCA claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary

7

function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. The main purpose of the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984). Therefore, federal courts lack subject matter jurisdiction as to any claims that fall within the discretionary function exception.

In United States v. Gaubert, 499 U.S. 315 (1991), the Supreme Court held that the discretionary function exception applies if the conduct underlying an FTCA claim both (1) "involv[e] an element of judgment or choice," Limone v. United States, 579 F.3d 79, 101 (1st Cir. 2009) (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)) (internal quotation marks omitted), and (2) "was susceptible to policy-related analysis." Id.

Conduct does not involve an element of judgment or choice if said conduct violates federal statutes, regulations, or formal agency policy that does not afford its employees any choice but "to adhere to the directive." Gaubert, 499 U.S. at 322. Therefore, in order to satisfy the first prong of the analysis, the agency or the employees in question must have been able to exercise discretion when undertaking the alleged tortious conduct. Abreu v. U.S., 468 F.3d 20, 25 (1st Cir. 2006).

If the Court finds that the challenged conduct involves an element of judgment or choice, we next need to consider "whether the judgment is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536; *see also* Varig Airlines, 467 U.S. at 813. In analyzing the second prong, we ask whether the exercise of discretion involves, or is susceptible to, policy related judgments. *See* Montijo-Reyes v. United States, 436 F.3d 19, 24 (1st Cir. 2006).

We therefore turn to the first step required under the inquiry, whether the conduct of the VA police officers, in restraining Plaintiff Soto-Maldonado, involved an element of judgment or choice. The VA police officers who responded to Plaintiff's location on the date in question were members of the "Resisto Team," a behavioral intervention team established by the VAMC in San Juan, Puerto Rico that responds to hospital patients who are exhibiting disturbed or aggressive behavior within the inpatient sections (Docket No. 14-8). In June 2009, the VAMC in San Juan established the Resisto Team, detailing its purpose, responsibilities, and procedures in Center Memorandum No. 118-09-07 ("Center Memorandum"). Under the guidelines prescribed in the Center Memorandum, Resisto Team members are responsible for safe and therapeutic interventions, and are trained to use physical restraint techniques only when necessary. Id. When physical restraint techniques are necessary, the team is instructed to use the least restrictive technique among those approved before progressing to more aggressive ones, always bearing in mind the patient's rights, physical safety, dignity, and well-being. Id.

The policies outlined in the Center Memorandum do not specify what the responding officers are supposed to do in every possible scenario that could potentially arise. Various procedures are identified, and the responding officers are tasked with using their best judgment in deciding how to proceed when a patient is not behaving accordingly. Here, the VA police officers used their best judgment and discretion when they decided to restrain Plaintiff Soto-Maldonado after being attacked.

Numerous Courts of Appeals have held that decisions made by police officers during the scope of their employment fall within the discretionary function exception of the FTCA, reasoning that although police officers have a mandatory duty to enforce the law, they have broad discretion as to how to enforce it. *See* Deuser v. Vecera, 139 F.3d 1190 (8th Cir. 1998)(finding that the conduct of two National Park Rangers was discretional when they arrested and later release plaintiff); Redmond v. United States, 518 F.2d 811, 816-17 (7th Cir. 1975) ("It cannot be denied that the Government has a duty to maintain law and order, but how best to fulfill this duty is wholly within the discretion of its officers ..."); United States v. Faneca, 332 F.2d 872 (5th Cir. 1964).

Accordingly, we hold that restraining and apprehending Plaintiff Soto-Maldonado was a discretionary function reserved to the judgment of the Resisto Team members.

We now move to the second part of the inquiry. Notwithstanding the judgment used by the Resisto Team when they intervened, we must ask "whether the judgment is of the kind that the discretionary

10

function was designed to shield." Berkovitz, 486 U.S. at 536. To be protected, the Resisto Team members' conduct must be "grounded in the social, economic, or political goals" of the Center Memorandum's discretionary enforcement guidelines. Gaubert, 499 U.S. at 323. Because the guidelines published in the Center Memorandum are clear and provide the VA police officers wide discretion in making enforcement decisions at the VAMC, the officers at the outset enjoy the presumption that their conduct in restraining Plaintiff Soto-Maldonado meets the second part of the test: that their actions were "grounded in policy." Id. at 324. In other words, if a provision of the Center Memorandum "allows the employee discretion, the very existence of the [provision] creates a strong presumption that a discretionary act authorized by the [provision] involves consideration of the same policies which led to the promulgation of the" Center Memorandum. Id.

In the case at bar, the Court finds that the conduct of the Resisto Team members was a permissible exercise of policy judgment, as their conduct was grounded in the social goals of the Center Memorandum's discretionary enforcement guidelines. When deciding when and how to restrain a disruptive patient, the officers must weigh and prioritize resources, security, and safety concerns. The Center Memorandum specifically states that the officers must "[protect] the patient's rights, physical safety, dignity, and well-being." (Docket No. 14-8, pg. 2). The main social goal of the DVA San Juan Medical Center in forming the Resisto Team was to ensure that there was a procedure in place that would guarantee the safety of the hospital

11

patients and personnel if a patient ever became aggressive or disruptive. The Resisto Team members' conduct on November 27, 2010 was grounded in the social goals delineated by the procedures set forth in the Center Memorandum. Initially, the Resisto Team members responded to Plaintiff Soto-Maldonado's location after being advised of his erratic behavior and calmly attempted to defuse the situation. However, they were forced to respond with force when Plaintiff Soto-Maldonado attacked one of the officers in order to ensure the health and safety of everybody present, including Plaintiff. Accordingly, we hold that the conduct of the VA police officers on November 27, 2010 was grounded in the social policies of the Center Memorandum.

Finding that the Government is able to satisfy both prongs, the Court holds that the VA police officers' conduct falls within the discretionary function exception of the FTCA. Hence, the Court lacks federal subject matter jurisdiction to hear Plaintiffs' FTCA claim against the United States.

**B.   Negligence**

Although this Court finds that the discretionary function exception of the FTCA applies to Plaintiffs' claims, as a matter of course we nonetheless proceed to analyze Plaintiffs' negligence claim.

Article 1802 states that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  31 P.R. Laws Ann. § 5141. Under Article 1802, a plaintiff suing for personal injuries must plead, and ultimately prove, four elements: 1) a duty requiring the defendant to conform to a certain standard of conduct; 2) a breach of that duty; 3)

12

proximate cause; and 4) damages. Coyne v. Taber Partners I, 53 F.3d 454, 459-462 (1st Cir. 1995); Woods-Leber v. Hyatt Hotels of P.R., 124 F.3d 47, 50 (1st Cir. 1997). "These requirements cannot be satisfied unless the plaintiff proves that the injury was reasonably foreseeable, and, thus, could have been avoided had the defendant acted with due care." Woods-Leber, 124 F.3d at 50-51. Therefore, to recover on a theory of negligence, Plaintiffs must show that negligent acts or omission of the employees at the VAMC were the proximate cause of their injuries. Malave-Felix v. Volvo Car Corp., 946 F.2d 967 (1st Cir. 1991)(stating that Puerto Rico defines legal cause as "proximate cause," and not actual or factual cause).

The duty of care "is anticipating reasonably probable injuries to probable victims." Irvine v. Murad Skin Research Laboratories, Inc., 194 F.3d 313, 322 (1st Cir. 1999). "A person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. A plaintiff, then, must show the foreseeable risks created by defendant's acts or omissions in order to carry his burden as to the element of a tort claims." Vazquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007). An actor is negligent if he fails to exercise due diligence to prevent a foreseeable injury. Malave-Felix, 946 F.2d at 972 ("a person is liable for injuries that a prudent person reasonably could anticipate."); see Rivera-Santiago v. United States, Civ. No. 08-1266, 2009 WL 702235, at *3 (D.P.R. Mar. 11, 2009)(holding that "negligence ensues if the injuries could be foreseen or reasonably anticipated by a reasonable and prudent person.").

After a plaintiff demonstrates that the defendant breached its duty of care, plaintiff must show that defendant's negligence was the proximate cause of his injuries. Vazquez-Filippetti, 504 F.3d at 49; see Malave-Felix, 946 F.2d at 972 ("one becomes liable, however, only if his negligence is the proximate cause of someone else's injuries."). Under Article 1802, proximate cause is defined in terms of foreseeability, which requires that a reasonable person should have foreseen the consequences of what actually occurred. Vazquez-Filippetti, 504 F.3d at 49; Wojciechowicz v. U.S., 582 F.3d 57, 67 (1st Cir. 1999); Malave-Felix, 946 F.2d at 971-72; Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288 (1st Cir. 1999). "To establish proximate cause, a plaintiff must prove that the accident was 'foreseeable and could have been avoided if the defendant had not breached its duty of care.'" Wojciechowicz, 582 F.3d at 67 (quoting Grajales-Romero, 194 F.3d at 296). In order for an event to be foreseeable, a reasonable, prudent person must be able to conclude from the evidence that "the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances." Coyne, 53 F.3d at 460. "A defendant's actions may only be the proximate cause of a plaintiff's injuries if they in fact caused the injuries and the defendant could have reasonably foreseen that the injuries would result from his actions." Vazquez-Filippetti, 504 F.3d at 49. "The action of the [defendant] must be judged against what a reasonable person, under the same or similar circumstances, would have done." Wojciechowicz, 582 F.3d at 67.

To succeed in their negligence cause of action, Plaintiffs must prove that the individuals employed by the VAMC owed them a duty of care and that they breached this duty of care when they restrained Plaintiff Soto-Maldonado on November 27, 2010. With regards to the first prong, Defendant's employees owed a duty of reasonable care to Plaintiffs, meaning that they had a duty to act as ordinary, prudent individuals under the circumstances. In order to satisfy the second prong, Plaintiffs bear the burden of showing that the actions of the VAMC's personnel were objectively unreasonable under the circumstances.

On November 27, 2010, Plaintiff went to the PICU at the VAMC in San Juan. Plaintiff reported feeling depressed and was experiencing crying episodes. When an examining physician asked the Plaintiff what had brought him to the hospital that day the Plaintiff responded "Don't do that to me. Read the record. I told the nurse my symptoms. I do not want to lose my control again because I do not know what could happen because I feel very nervous." When pressed by Dr. Hurtado, the physician on duty, Plaintiff became disorganized, disruptive, and aggressive. He began threatening the medical staff and the VA police officers and stated that "I will jump on top of you and do whatever I want. Do you want to see? If you inject me with medication, you will have to fight." When Officer Luis Salas Lopez, a VA police officer assigned to the ICU, attempted to calm down the Plaintiff, Plaintiff began attacking the police officers with his fists. Two other officers on the scene, Sgt. Gonzalez and Officer John Rivera, attempted to apprehend the Plaintiff by locking his hands behind his back.

15

Plaintiff resisted, was able to free his right hand, and grabbed Officer Salas' head, causing a fingernail scratch across his forehead. Once subdued, Plaintiff was placed in a bed and upon Dr. Hurtado's orders was sedated.

The Court finds that the actions undertaken by the personnel at the VAMC were reasonable under the circumstances. Plaintiff became aggressive and disruptive while he was being examined by Dr. Hurtado and was unable to control his emotions. When he reacted by attacking the police officers, the officers were within their right to use reasonable force to thwart Plaintiff's actions and to subdue him. Given Plaintiff's fragile mental state at the time of the incident, it was reasonable for the VAMC personnel to restrain him the way they did. Defendant did not breach its duty of care, as the VA police officers exercised reasonable care in restraining Plaintiff Soto-Maldonado.

To satisfy the third and fourth prongs, Plaintiffs must prove that they were injured and that Defendant's conduct was the proximate cause of their injuries. Plaintiffs have failed to satisfy their burden as to the last two prongs, as there is no evidence on the record that the Plaintiffs were actually injured as a result of Defendant's action on November 27, 2010. On November 30, 2010, Plaintiff Soto-Maldonado met with Dr. Zaida Reoyo, a DVA psychiatrist, and reported having been punched in the mouth and having his right arm twisted during the altercation three days earlier. Dr. Reoyo examined Plaintiff Soto-Maldonado and found "absolutely no evidence, whatsoever" of any recent trauma or open wound. As a precautionary

measure, Dr. Hurtado ordered chest x-rays and bone surveys to scan for possible fracture and both tests came back negative for any recent traumatic lesions.

Accordingly, Defendant's Motion for Summary Judgment must be **granted**, as Plaintiffs failed to set forth sufficient evidence to succeed in their negligence cause of action. Additionally, the Court **grants** summary judgment on behalf of Defendant with regards to Plaintiffs' Article 1803 claim, as a superior cannot be held liable for the negligent actions of its employees when said employees were not negligent.

## IV. CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS** the United States' Motion for Summary Judgment (Docket No. 14).[2] Accordingly, Plaintiff's federal cause of action under the FTCA is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of October, 2013.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge

---

[2] In its *Motion to Quash and Deny* (Docket No. 22), Plaintiffs argue that Defendant's use of Plaintiff Soto-Maldonado's prior medical records is illegal, in that said use violates HIPAA Privacy laws. The Court stresses that Plaintiff Soto-Maldonado's prior medical records were not taken under consideration in its *Motion for Summary Judgment* analysis. Accordingly, the Court hereby **DENIES** Plaintiffs' *Motion to Quash and Deny* on mootness grounds.

Notwithstanding, in the instant case Plaintiff's medical condition was a part of the controversy. Plaintiff simply cannot allege that at the time of the incident he was seeking psychiatric help at the VAMC in San Juan and then attempt to withhold his medical history. *See* Schoffstall v. Henderson, 223 F.3d 818 (8th Cir. 2000)(admitting Plaintiff's medical records when Plaintiff placed medical condition at issue); *see also* Doe v. Oberweis Dairy, 456 F.3d 704 (7th Cir. 2006)(same).